BEFORE THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ELIUD GARCIA ORTIZ, JOSE LUIS MACIAS, JUAN RIVERA AND JOSE PACHECO, | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | CAUSE NO. 4:11-cv-02152 |
| v. | § | |
| | § | |
| HONGHUA AMERICA, LLC, | § | |
| | § | |
| DEFENDANT | § | |

**DEFENDANT HONGHUA AMERICA, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL**

## TABLE OF CONTENTS

I. Memorandum of Law in Support of Motion to Disqualify Plaintiff's Counsel .................1

II. Table of Contents ........................................................................................ i

III. Table of Citations........................................................................................ ii

IV. Short Statement of Nature and Stage of Proceedings ...................................... iv

V. Statement of Issue to Be Ruled Upon ...........................................................v

VI. Short Summary of the Argument ................................................................ vi

VII. Factual Background ......................................................................................2

VIII. The Countervailing Concerns: The Ethical Concerns Outweigh Sherwood's Interests in Choosing a Particular Counsel ..........................................................8

IX. This Court has Inherent Power to Preserve an Ethical Adversary Process Through Disqualification..............................................................................9

X. Considerable Authority Favors Disqualification Here .......................................11

XI. Texas Law.....................................................................................................14

XII. The Basu Law Firm Should be Disqualified ......................................................16

XIII. Basu and Sherwood's Self-Serving Statements of Innocence Must be Disregarded; a Presumption of Disclosure Should be Assumed .......................................17

XIV. Protecting Public Perceptions ......................................................................21

# TABLE OF CITATIONS

## A. Circuit Court


*Board of Ed. v. Nyquist*, 590 F.2d 1241 (2d 1979) ........................................................ 10

*Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261(5th Cir. 2001) ........................ 9, 10

*Hull v. Celanese Corp.*, 513 F.2d 568 (2d Cir. 1975) .......................... v, 11, 13, 14, 15, 20

*In re Am. Airlines, Inc.*, 972 F.2d 605 (5th Cir. 1992) ............................................ v, 9, 11

*In re Dresser Indus.*, 972 F.2d 540 (5th Cir. 1992) .......................................................... 9


## B. District Court


*1210 Colvin Ave., Inc., v. Tops Mkts., L.L.C.*, 2006 U.S. Distr. LEXIS 93689 (W.D.N.Y. Dec. 27, 2006) ........................................................................................ 16

*Arnold v. Cargill, Inc.*, 2004 U.S. Dist. LEXIS 19381 (D.Minn. Sept. 24, 2004) ........................................................................................ 11

*Cargill Inc. v. Budine,* 2007 U.S. Dist. LEXIS 48405 (E.D. Ca. June 22, 2007) ........................................................................................ v, 9, 10, 13, 17

*Cordy v. The Sherwin-Williams Co.*, 156 F.R.D. 575 (D.N.J. 1994) ..... v, 11, 13, 16, 19, 20

*Filippi v. Elmont Union Free Sch. Dist. Bd. of Ed.*, 722 F.Supp.2d 295 (E.D.N.Y. 2010) ........................................................................................ 10, 11

*MMR/Wallace Power & Ind., Inc., v. Thames Assocs.*, 764 F.Supp. 712 (D. Conn. 1991) ........................................................................ 8, 9, 10, 13, 16, 19, 20

*Rentclub, Inc., v. Transamerica Rental Finance Corp.*, 811 F.Supp. 651 (M.D. Fla. 1992), *aff'd*, 43 F.3D 1439 (1995) (per curiam) ............................ 2, 10, 16, 18

*Smith v. Cole*, 2006 U.S. Dist. LEXIS 28445 (D.Or. March 2, 2006) .............................. 11

*United States v. SAE Civil Construction, Inc.*, 1996 U.S. Dist. LEXIS 3454 (D. Neb. Jan. 29, 1996) ........................................................................ 10, 19, 20, 21

*Williams v. Trans World Airlines, Inc.,* 588 F. Supp. 1037 (W.D. Mo. 1984) ........................................................................ v, vi, 8, 11, 12, 16, 17, 19, 20, 21

**C. State Court**

*In re Bell Helicopter Textron, Inc.*, 87 S.W.3d 139 (Tex.App.—Fort Worth 2002, no pet.) ....................15

*In re Epic Holdings, Inc.*, 985 S.W.2d 41 (Tex. 1998)....................15

*In re Hoar Constr., L.L.C.,* 256 S.W.3d 790 (Tex.App.-Houston [14th Dist.] 2008, pet. denied)....................11

*In re Meador*, 968 S.W.2d 346 (Tex. 1998) ....................11, 14, 15

*National Medical Enters., Inc., v. Godbey*, 924 S.W.2d 123 (Tex.1996)....................11

**STATUTORY PROVISIONS**

**A. State**

L.R. for Southern Dist. of Texas, Appendix A, Rule 1....................11

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.12 cmt., 1 ....................2

**Short Statement of Nature and Stage of Proceedings**

The claims that are pending before the Court are overtime and retaliation allegations brought under the Fair Labor Standards Act. The lawsuit was filed on June 7, 2011. This Court entered a scheduling order in October, and Defendant has responded to some preliminary written discovery from Plaintiffs. No further activity has transpired.

This disqualification issue has arisen now because Plaintiffs' counsel, the Basu Law Firm ("Basu"), filed in December 2011 a state court lawsuit on behalf of HHA's former Vice President, Stace Sherwood ("Sherwood"). While he was working as HHA's Vice President from January to September 2011, Sherwood had access to ***all*** confidential data of HHA and the undersigned counsel ("Attorney Johnson") related to this lawsuit and all other related issues that have arisen (see *infra* at footnote no. 9). Effectively, Sherwood *was* HHA for these litigation purposes. Further, there is information suggesting that Sherwood's activities have been underhanded and aimed at disclosing company confidences. For example, HHA believes that Sherwood, upon his departure from HHA, also took the Company (and, thus, HHA has separately sued to have that computer and HHA sensitive data returned, see Ex. B). HHA also recently learned that Sherwood made secret audio recordings of HHA officers and managers. Therefore, Sherwood's engagement of Basu for his own breach of contract lawsuit raises a serious ethical issue, strongly suggesting an appearance of impropriety and the actual or inevitable disclosure of HHA confidences – particularly in light of Sherwood's high rank; the amount and extent of data that he received, monitored and provided; his retention of HHA's computer; and his covert recording of former colleagues. Despite request, Basu has refused to disengage itself from this ethical dilemma. Therefore, for the reasons noted within, HHA comes to this Court to ask that Basu's disqualification be ordered.

## Statement of Issue to Be Ruled Upon

**The sole issue to be ruled on is the following:**

> *Should the Basu Law Firm be disqualified from representing the Ortiz Plaintiffs in light of Basu's dual representation of Sherwood, a former high-ranking HHA official who had access to all HHA confidences related to these Plaintiffs and their claims?*

**The standard of review is as follows:**

This matter is within the Court's discretion, and the Court's authority to disqualify an attorney "arises from its inherent power to preserve the integrity of the adversarial process." *Cargill Inc. v. Budine,* 2007 U.S. Dist. LEXIS 48405, *21-22 (E.D. Ca. June 22, 2007).[1] The issue is an independent federal law consideration. *See In re Am. Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992). The Fifth Circuit has admonished that "the relevant ethical standards are to be rigorously applied when reviewing disqualification motions." *Id.* at 611. A court need not wait until unethical conduct threatens the proceedings before disqualification is proper. *Id.* Finally, "any doubt is to be resolved in favor of disqualification." *Cordy v. The Sherwin-Williams Co.*, 156 F.R.D. 575, 584 (D.N.J. 1994) (emphasis added) (citing *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975). To avoid the appearance of impropriety, disqualification has been ordered where nonlawyers armed with confidential data, like Sherwood, have switched sides, during pending disputed litigation, and linked forces with an opposing counsel against whom that nonlawyer once fought while employed by his/her former employer. *See*, e.g., *Williams v. Trans World Airlines, Inc.*, 588 F. Supp. 1037 (W.D. Mo. 1984) and other authority cited within.

---

[1] Pertinent cases and slip opinions are attached as Ex. G.

**Short Summary of the Argument**

Disqualification of the Basu Law Firm is warranted for the following reasons:

In December 2011, Basu filed a state court lawsuit on behalf of HHA's former Vice President, Stace Sherwood, against HHA. At that time and since *at least January 2011*, Basu has represented these Plaintiffs also. This dual representation poses an ethical dilemma.

While he was working as HHA's Vice President from January to September 2011, Sherwood had access to ***all*** confidential data of HHA and/or privileged data supplied by the undersigned counsel, as related to this lawsuit and other connected issues.[2] Effectively, Sherwood *was* HHA for all litigation purposes. Further, HHA believes that Sherwood, upon his departure from HHA, took the Company laptop (and, thus, HHA, has separately sued to have that computer and its company data returned, see Ex. B). And, Sherwood recently disclosed that he made secret recordings of other HHA officers and managers. Thus, Sherwood is clearly in possession of highly sensitive HHA confidences, and it appears that he planned and has intended to use that data against the company, his former employer. Therefore, Sherwood's engagement of Basu for his own breach of contract lawsuit raises a serious ethical issue, strongly suggesting an appearance of impropriety and the actual or inevitable disclosure of HHA confidences in this case. Despite request, however, Basu refuses to disengage itself from this ethical dilemma. Therefore, for the reasons noted within, HHA comes to this Court to ask that Basu's disqualification be ordered, so that the litigation playing field can be leveled and HHA can fairly defend itself in this adversarial proceeding. *See*, e.g., *Williams v. Trans World Airlines, Inc.*, 588 F. Supp. 1037 (W.D. Mo. 1984) and other authority cited within.

[2] Plaintiffs have also alleged negligence, fraud, and conspiracy claims against HHA as a result, allegedly, of having to pay "kickbacks" to certain HHA workers and supervisors. See *Ortiz v. HongHua America, LLC*; Cause No. 2011-74114, which is pending in the 215th Judicial Court of Harris County. Sherwood was involved in HHA's defenses to all these claims.

## Factual Background

The facts are straightforward.[1] Stace Sherwood acted as the Vice President of Sales and Operations at HHA[2] from about January 2011 to September 2011.[3] During that time, various issues related to these Plaintiffs and several possible claims arose.[4] HHA retained Attorney Johnson to assist it, and Sherwood was HHA's designated representative as to all these issues.

HHA, as a limited liability company, is not a natural person and must therefore act through its officers or executives.[5] There cannot be any question that Sherwood, as HHA's Vice President, was acting on behalf of HHA in his role of working with the undersigned counsel and in managing the Company's defense of the overtime and other claims that arose. Because Sherwood acted with this authority and told counsel as much, Attorney Johnson trusted him and

---

[1] Facts supporting this Motion are sworn to by the undersigned counsel in the Johnson Aff't, Ex. A.

[2] HHA is a Texas limited liability company whose primary business is the construction and selling of oil rigs and related equipment. HHA's base of operations is in Houston, on McHard road.

[3] Plaintiff stopped coming to work sometime in September 2011, and HHA provided formal notice of termination of his employment agreement dated November 3, 2011. See differing pleadings in *Sherwood v. HongHua America, LLC*, Cause no. 2011-74112, in the 11th Judicial District Court of Harris County.

[4] This lawsuit is brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.* In state court, Plaintiffs' allegations are negligence, fraud, and conspiracy, as related to the alleged "kickbacks" that these Plaintiffs paid to certain workers and supervisors. See *Ortiz v. HongHua America, LLC*; Cause No. 2011-74114, which is pending in the 215th Judicial Court of Harris County. As to all of these issues Sherwood played a direct and significant role in helping HHA shape its legal defense and plans.

[5] The comments to Rule 1.12 of the Texas Rules recognize the following: "Unlike individual clients who can speak and decide finally and authoritatively for themselves, an organization can speak and decide only through its agents or constituents such as its officers or employees. In effect, the lawyer-client relationship must be maintained through its agents or constituents such as its officers or employees." *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.12 cmt., 1. Furthermore,

> It has been recognized that **a former employee who is a "party" because of his position and knowledge will remain a party even after he leaves the corporation because that employee has a memory**. The corporation continues to have a vital interest in the employee's knowledge of privileged information and its potential release to opposing counsel in litigation after the employee leaves.

*Rentclub, Inc., v. Transamerica Rental Finance Corp.*, 811 F.Supp. 651, 658 (M.D. Fla. 1992), *aff'd*, 43 F.3d 1439 (1995) (per curiam) (emphasis added) (citation omitted).

disclosed and discussed with him *every* factual, legal and practical issue facing the Company as to the myriad of claims at stake. Without this trust, the disclosures would not have been made.

The nature and extent of the claims,[6] the potential amount of damages, and the range of persons allegedly involved are all factors that have impacted HHA critically. Thus, as "point person," Sherwood was critical to HHA's defense, and, he was given access to the most fundamental and far-reaching attorney-client and work-product privileged materials as one might imagine. He had access to everything. Furthermore, while he was given every lawyer idea, advice and stratagem about the various claims as they unfolded, Sherwood was also the key person who provided HHA's counsel every bit of Company data relevant to these allegations.

Then, with all this knowledge in his back pocket, Sherwood left HHA in September 2011. Unhappy about his own employment contract, Sherwood is now separately suing HHA.[7]

That contract dispute is not the issue in this Motion[8]; the issue is that Sherwood has now effectively switched sides and retained the Basu Law Firm in his breach of contract lawsuit *even though* Basu has represented these overtime Plaintiffs at least since the moment these matters came to HHA's attention, *all while Sherwood acted as the Company confidante on those very overtime issues*. Prior to leaving HHA, Sherwood conferred extensively with Attorney Johnson

[6] As noted in footnote no. 9, the issues are broader than just overtime claims .The claims include overtime, retaliation, discrimination, immigration, negligence, and conspiracy issues. See text at 5 and footnote no. 9.

[7] See *Sherwood v. HongHua America, LLC*; Cause No. 2011-74112; in the 11th Judicial District Court of Harris County, Texas. This lawsuit was filed on December 9, 2011.

[8] Obviously, if Sherwood has a dispute with HHA he has a right to seek judicial adjudication of same (and HHA may defend itself of that charge in that separate lawsuit). The issue asserted here results not because of Sherwood's lawsuit but because of the representation of Sherwood by the very law firm against whom his interests were adverse for over eight months and, more importantly, the fact that Sherwood was the main person at HHA with whom all attorney-client communications were funneled on these same issues.

about the claims brought by Basu and others.[9] So, Sherwood is the holder of an abundance of highly confidential data of HHA related to this lawsuit.

Additionally, at the time Sherwood left HHA, he is believed to have taken the Company-owned laptop, containing confidential, proprietary, and sensitive information regarding HHA. Sherwood has rebuffed HHA's request that the laptop be returned. While he denies possessing the computer, he was the only person who had the equipment at the time he stopped working. As a result, HHA has had to bring a counterclaim against Sherwood to have this proprietary data and equipment returned. See Ex. B, HHA's answer and counterclaim.

Moreover, Sherwood recently disclosed that he had taken secret audio recordings of former colleagues, other HHA officers and managers. And, Sherwood has threatened to use confidential data against HHA. **These facts signal that Sherwood had and continues to have intentions to hurt HHA by using the confidential data that he possesses.**

Thus, HHA seeks to disqualify the Basu Law Firm because, at a minimum, Basu has violated an attorney's obligation to avoid the appearance of impropriety by representing these overtime Plaintiffs while at the same time representing Sherwood, HHA's former key spokesman on this very lawsuit. It is inevitable that improper disclosure will occur (or has occurred), and

---

[9] This controversy started in first quarter 2011, when Sherwood was HHA's Vice-President, and has resulted to date in five-related lawsuits being filed, in addition to this one. Four are overtime cases and are pending in the Southern District of Texas. See *Vargas v. HongHua America, LLC*, Cause No. 4:11-cv-02403; *Trahan v. HongHua America, LLC*, Cause No. 4:11-cv-02271; *Walker v. HongHua America, LLC,* Cause No. 4:12-cv-00134; *Garcia v. HongHua America, LLC*, Cause no. 4:12-cv- 0486. In addition, the *Vargas* case also asserts that plaintiffs improperly paid money to HHA supervisors and this money is allegedly owed to the *Vargas* plaintiffs as wages. The fourth case is in state court and was brought by the *Ortiz* group. Like the *Vargas* plaintiffs, the *Ortiz* group seeks the recovery of alleged improper payments they made to supervisors (they assert in state court various claims of negligence and conspiracy). See *Ortiz v. HongHua America, LLC*; Cause No. 2011-74114, which is pending in the 215th Judicial Court of Harris County. Also, as noted, Sherwood has filed his employment action in state court, as well. See *Sherwood v. HongHua America, LLC*, Cause no. 2011-74112. Finally, added to these formal lawsuits, the *Ortiz* group, under Basu's advocacy, also has asserted discrimination claims before the EEOC. That administrative body rejected those claims, finding that the *Ortiz* plaintiffs were contractors, not employees. See Ex. C. As can be easily seen, these claims are complicated, and Sherwood managed HHA's defense as to these extensive employee issues for some eight months before his departure.

Basu has set up the perfect arrangement, protected by attorney-client confidence, to induce that disclosure. Under these circumstances, it would be a betrayal of the public's trust for this Court to condone this duplicity.

This lawsuit is, at core, an overtime lawsuit, which initially sought a collective action designation.[10] Those claims are complicated enough, but the larger controversy also has raised questions of retaliation,[11] alleged "kickbacks" to certain persons who once worked at HHA,[12] immigration concerns,[13] and various discrimination allegations.[14] These matters first arose with certain anonymous letters[15] and demand letters from the Basu Law Firm (the first dated January 19, 2011, Ex. E) on behalf of these same Plaintiffs. Internal Company investigations (and remediation) followed; a mediation with the Basu group was early on attempted[16]; Basu then filed EEOC charges, which were responded to (and later dismissed)[17]; next, Basu brought the

[10] Plaintiffs have since jettisoned the collective action portion of their allegations.

[11] The alleged retaliation reportedly stems from the overtime charge. Plaintiff Ortiz claims that he was retaliated against for making this claim. See Plaintiff's Amended Complaint in this lawsuit.

[12] The *Ortiz* Plaintiffs have raised this question in a separate state court action. See *Ortiz v. HongHua America, LLC*; Cause No. 2011-74114, which is pending in the 215th Judicial Court of Harris County. The same issue is raised in the *Vargas* case, too. See *Vargas v. HongHua America, LLC*, Cause No. 4:11-cv-02403, in the Southern District of Texas.

[13] There have been some concerns about Plaintiffs' legal status to work in this country.

[14] Basus filed EEOC charges on behalf of the *Ortiz* Plaintiffs, alleging racial and national origin discrimination. HHA responded, relying, in part, on Sherwood's own Affidavit. Ex. H. The EEOC then rejected all of these claims finding that Plaintiffs were *not* employees but were contractors, and, thus, were not subject to Title VII protection (the same defense raised here). See Ex. C.

[15] Ex. D.

[16] The *Ortiz* Plaintiffs and HHA mediated with Nancy Huston in April 2011. The mediation was not successful, unfortunately. Sherwood was a Company representative at that mediation, and the Basu Law Firm represented Plaintiffs then, too, as it has done since January 2011.

[17] These charges were ultimately dismissed because the EEOC determined, as HHA alleges here, that Plaintiffs were not employees but were contractors, not subject to Title VII protection. Ex. C.

overtime and other claims[18] on behalf of the Ortiz group; and HHA's vigorous defense in response followed[19] As to each and every claim and move by Basu, Sherwood has played a major role in leading HHA's defense and in dealing with HHA's outside counsel.

Suffice to say, as the Court may easily see, the issues have been diverse, challenging, and multi-faceted. At each step, *from the opposing side*, Basu has been involved *from the very beginning*; and, in similar form, *from HHA's side*, Sherwood had been involved *from the very beginning*, as the lead person who coordinated the Company's defense directly with HHA's counsel, Andrea Johnson.

Thus, Sherwood is knowledgeable of all aspects of HHA's defenses, both legal and factual, and now he is represented by the very law firm against whom he was once fighting this action on HHA's behalf. These communications included legal strategies, defenses, factual issues, cost of defense, and settlement valuation. Additionally, Attorney Johnson shared detailed legal and factual analyses of the claims asserted including perceived strengths and weaknesses of HHA's positions.

Sherwood's involvement began when this controversy first came to light in January 2011 and then with the first call to the undersigned counsel. HHA designated Sherwood as the lead person for attorney communication, and he signed the letter retaining counsel's firm. Ex. F. Relying on the attorney-client privilege, Attorney Johnson participated in approximately 30-40 telephone conversations and exchanged hundreds of emails with Sherwood regarding these wage and other claim disputes. For his part, Sherwood not only communicated often with Attorney Johnson, but he also was a corporate representative at mediation and worked on the Company's

[18] See *Ortiz v. HongHua America, LLC*; Cause No. 2011-74114, which is pending in the 215th Judicial Court of Harris County.

[19] See footnote no. 9.

EEOC response (he helped prepare and signed an extensive affidavit on HHA's behalf[20] in opposition to the EEOC charges filed by Basu). In short, he was HHA's "go to" person on all litigation-related issues that arose while he was there. It is noteworthy that Basu was on the other side of the table at the very mediation at which Sherwood appeared as HHA's nonlawyer representative.

The enormous depth of Sherwood's involvement and the unrestrained extent of the confidential communications provided to him are detailed in Ex. A, the Johnson Aff't, and in a notebook of numerous emails that were sent to Sherwood over the months (to be provided to the Court for *in camera* inspection, upon the Court's request, Ex. I). The notebook contains only communications from counsel to Sherwood (or ones on which he was "cc'd" with other Company representatives), yet there are hundreds of privileged pages included in this group, and they cover all nature of liability, damages, evaluation, investigation and budgetary concerns for this controversy – including numerous legal memoranda and attorney work product. In a nutshell, Sherwood was privy to everything confidential. He was the funnel, the holder, the liaison, the commentator, and the director of this HHA data; he *was* the client.

That Sherwood, who stood in place of HHA,[21] is now directly associating with the same firm against whom he was opposed on HHA's behalf is unfathomable. Moreover, that situation alone raises obvious questions about disclosure of confidences – none of which can be confirmed without breaching Sherwood's current relationship with Basu. *That he has retained the Company's laptop with confidential data (see Ex. B), covertly recorded his colleagues, and has threatened disclosure of HHA data all underscores the likelihood of disclosure.* The inappropriateness of Sherwood's engagement of Basu is obvious to all, but apparently not to

[20] Ex. H.

[21] See footnote no. 5.

Basu, who, of course, now controls the single HHA employee with the most knowledge about its defense in this lawsuit.

**From a Machiavellian view, the association is a no brainer. But Machiavelli does not set the ethical rules of this Court, and Basu should have chosen more wisely.**

Basu has been asked,[22] but it refuses to voluntarily disengage itself from this ethical dilemma. It claims that it sees nothing wrong with the dual representation of these Plaintiffs and of Sherwood. Basu may assert that HHA raised this issue first in the state court in which the *Sherwood* lawsuit is pending. In denying that motion, Judge Miller specifically pointed to this Court as being the proper arbiter of these issues, since the overtime claims that Sherwood investigated reside here. Contrary to what Basu may argue, however, HHA is not seeking a "second bite at any apple." Instead, HHA seeks *the first bite* at fairness so it does not have to proceed with a "nagging suspicion"[23] that its secrets are being or may be disclosed, *whether intentionally or not*. Moreover, HHA should not be put in the position of having to explain this unsavory relationship to a jury. That is why HHA comes to this Court, to cure Basu's ethical blindness, to disqualify the Basu Law Firm, and to return fairness to the litigation arena in which HHA must defend itself.

**The Countervailing Concerns: The Ethical Concerns Outweigh Sherwood's Interests in Choosing a Particular Counsel.**

The issues involve countervailing concerns: (1) protecting a party's interest to select counsel of choice, balanced against (2) the judicial system's demands that lawyers represent parties in an ethical manner, in such way as to not demean our courts which seek to offer an even

[22] Counsel sent the Motion in advance of filing to Basu on March 12, 2012. Basu requested several days to review the Motion, which Attorney Johnson permitted, as a professional courtesy. The Motion was filed on March 22, 2012, when Basu made clear its intentions not to withdraw but to oppose the Motion.

[23] *See Williams v. Trans World Airlines, Inc.*, 588 F.Supp. 1037, 1045 (W.D. Mo. 1984).

playing field for all - in short, *to avoid the appearance of impropriety*. *See Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 266 (5th Cir. 2001).[24] The balancing of these competing interests requires the Court to weigh whether the attorney's representation: (1) has the appearance of impropriety in general; or (2) raises the possibility that a specific impropriety will occur; and (3) the likelihood of public suspicion resulting from the impropriety outweighs any social interests that seek to allow an attorney to continue his/her representation of a particular party. *See In re Dresser Indus., Inc.,* 972 F.2d 540, 543 (5th Cir. 1992). All these factors favor HHA.

Admittedly, the issue before the Court is not one of disqualifying the Basu firm because of a direct, prior representation of HHA. The disqualification concerns solely the opposing counsel's welcoming of a former adversary, a high-ranking HHA official, who was given the keys to the kingdom in defending the Company against that very opposing counsel, and an official whom HHA believes has retained the Company laptop with HHA confidences. On the one hand, the relationship clearly provides an improper advantage; on the other, it taints this entire proceeding and flies in the face of the ethics that all Court officers are called to follow.

**This Court Has Inherent Power to Preserve an Ethical Adversary Process through Disqualification.**

This Court's authority to disqualify an attorney "arises from its inherent power to preserve the integrity of the adversarial process." *Cargill Inc. v. Budine,* 2007 U.S. Dist. LEXIS 48405, *21-22 (E.D. Ca. June 22, 2007). The issue is an independent federal law consideration. *See In re Am. Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992). As the Court in *MMR/Wallace*

---

[24] *See also MMR/Wallace Power & Ind., Inc., v. Thames Assocs.*, 764 F.Supp. 712, 718 (D. Conn. 1991) (the client's choice in counsel may be outweighed if the "asserted course of conduct by counsel threatens to affect the integrity of the adversarial process"). The appearance of impropriety is sufficient to justify "prompt remedial action" by a court. *Id.* (citation omitted).

*Power & Ind., Inc., v. Thames Assocs.*, 764 F.Supp. 712 (D. Conn. 1991), stated, "Federal courts have inherent authority to discipline attorneys who appear before them for conduct deemed inconsistent with ethical standards imposed by the court." *Id.* at 717 (citations omitted). Courts are so authorized in order to "preserve the adversary process." *Id.*[25] As the *Cargill* court further stated,

> It is the duty of the district court to examine the charge, since it is that court which is authorized to supervise the conduct of the members of its bar. The courts, as well as the bar, have a responsibility to maintain public confidence in the legal profession. This means that ta court may disqualify an attorney for not only acting improperly but also for failing to avoid the appearance of impropriety."

2007 U.S. Dist. LEXIS 48405, *23 (quoting *Gas-A-Tron v. Union Oil Co.*, 534 F.2d 1322 (9th Cir. 1976), *cert. denied,* 429 U.S. 861 (1976)). *See Rentclub*, 811 F.Supp. at 657 ("the likelihood of public suspicion aroused by this relationship necessarily outweighed the social interest that would be served by counsel's continued participation"); *MMR/Wallace Power,* 764 F.Supp. at 718 ("preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar is paramount"); *accord United States v. SAE Civil Construction, Inc.*, 1996 U.S. Dist. LEXIS 3454, *10-11 (D. Neb. Jan. 29, 1996). Further, this Court must "guard against the inadvertent use of confidential information." *Cargill,* 2007 U.S. Dist. LEXIS 48405, *32.

When a party moves to disqualify an attorney, the Court considers (1) the local rules; American Bar Association's ("ABA") Model Rules of Professional Conduct; ABA's Model Code of Professional Responsibility and (4) state rules of professional conduct. *See Horaist*, 255 F.3d at 266; *see also Filippi v. Elmont Union Free School Dist. Bd. of Ed.*, 722 F.Supp.2d 295, 302 (E.D.N.Y. 2010) (both conflict of interest and "appearance of impropriety" led to disqualification of law firm, which had an associate sitting on school district board while the firm was suing that board on behalf of a plaintiff; *id* at 315). In fact, this Court's Local Rules state

[25] Citing to *Board of Ed. v. Nyquist*, 590 F.2d 1241 (2d 1979).

that the Texas Rules provide only the "minimum standard" of ethics to be exercised before this Court and that it is not limited by that code. *See* L.R. for Southern Dist. of Texas, Appendix A, Rule 1. The Fifth Circuit has admonished that "the relevant ethical standards are to be rigorously applied when reviewing disqualification motions." *In re Am. Airlines, Inc.*, 972 F.2d at 611. A court need not wait until unethical conduct threatens the proceedings before disqualification is proper. *Id.*

The preambles to both the ABA Model Rules of Professional Conduct and the Texas Rules provide that a lawyer has responsibilities not only to his client, but also to the legal system. Actions taken by a lawyer that cast suspicion upon the fairness and propriety of the legal system, or a particular case within that system, harm the profession and the administration of justice. Texas courts have recognized this principle. Thus, **a court has the power to disqualify an attorney even where no express violation of a specific disciplinary rule has occurred.**[26]

Finally, "any doubt is to be resolved <u>in favor of</u> disqualification." *Cordy v. The Sherwin-Williams Co.*, 156 F.R.D. at 584 (emphasis added) (citing *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975). *Accord Filippi*, 722 F.Supp.2d at 302; *Smith v. Cole*, 2006 U.S. Dist. LEXIS 28445, *5 (D.Or. March 2, 2006); *Arnold v. Cargill, Inc.*, 2004 U.S. Dist. LEXIS 19381, *14-16 (D.Minn. Sept. 24, 2004).

**<u>Considerable Authority Favors Disqualification Here.</u>**

Lawyers have been disqualified in the very same kind of situation posed by Sherwood's alliance with Basu. For example, in *Williams v. Trans World Airlines, Inc.*, 588 F.Supp. 1037 (W.D. Mo. 1984), TWA's <u>*non*</u>lawyer Manager of Personnel Administration ("HR Manager")

---

[26] *In re Meador*, 968 S.W.2d 346, 350 (Tex. 1998) ("disciplinary rules are only guidelines for disqualification motions . . . . [I]t is clear that a court has the power, under appropriate circumstances to disqualify an attorney even though he or she has not violated a specific disciplinary rule"); *National Medical Enters., Inc., v. Godbey*, 924 S.W.2d 123, 132 (Tex.1996). *See also In re Hoar Constr., L.L.C.*, 256 S.W.3d 790, 794 n. 3 (Tex.App.-Houston [14th Dist.] 2008, pet. denied).

had been called on by in-house counsel to assist in the company's investigation of certain age discrimination claims (the *Williams* lawsuit). She helped prepare TWA's response to the EEOC, she received confidential data, conferred with witnesses, and she prepared confidential memos for company counsel. Then, this HR manager left TWA. She decided, as Sherwood has done here, to sue her former employer. She chose the opposing counsel in the age case to represent herself in regard to her own separate discrimination allegation. Though at one point plaintiff's counsel boasted of a "secret witness" relevant to the age case, the ex-HR manager swore, once the disqualification issue arose, that she had "no specific knowledge of the [two age] cases," and plaintiff's counsel argued that no confidential disclosures had been made; they promised that none would happen. Nonetheless, the court still ordered disqualification. The reasons are easy to understand, as the *Williams* court noted:

(1) The HR Manager undeniably had access to very critical confidential data.

(2) Given her past work at TWA and her then-current relationship with plaintiff's counsel, the HR Manager was in an obvious position to disclose confidential data, regardless of her claimed ignorance and promise not to do so.

(3) As a non-lawyer, the HR Manager "would be more likely to reveal" these confidences.

(4) A "reasonable member of the public or of the bar might assume that [the HR Manager's counsel] would encourage her to disclose fully everything she knew about the personnel policies of TWA."

(5) It was inevitable that the HR Manager's "memory could be triggered by pretrial preparation of her case or of plaintiffs' cases where she will be a witness."

*Id.* at 1044. Acknowledging the HR Manager's *non*lawyer status, the *Williams* court still found that situation would ultimately have a harmful, a dampening, effect on what all desire in the attorney-client relationship: an unfettered flow of communication. The court also felt that the continued representation would corrupt the public trust of the judicial system:

> Non-lawyer personnel are widely used by lawyers to assist in rendering legal services. . . If information provided by a client in confidence to an attorney for the purpose of obtaining legal advice could be used against the client because a member of the attorney's non-lawyer support staff left the attorney's employment, it would be a devastating effect both on the free flow of information between client and attorney and on the cost and quality of the legal services rendered by an attorney. Every departing secretary, investigator, or paralegal would be free to impart confidential information to the opposition without effective restraint. **The only practical way to assure that this will not happen and to preserve public trust in the scrupulous administration of justice is to subject these "agents" of lawyers to the same disability lawyers have when they leave legal employment with confidential information.**

*Williams* at 1044.[27]

Thus, the court declared that disqualification was necessary to protect TWA's rights, uphold the ethical rules, and protect the judicial process. *See MMR/Wallace,* 764 F.Supp. at 727 ("To condone such conduct, and simply allow [the former employee] to switch camps could, by potentially giving [the defendant] unrestricted access to plaintiff's trial strategies and tactics, have a devastating effect on the outcome of the litigation."); *Cordy*, 156 F.R.D. at 584 ("the fairness and integrity of the judicial process and Plaintiff's interest in a trial free from the risk that confidential information has been unfairly used against him must all be considered and outweighs Defendant's interests") (citation omitted); *Cargill,* 2007 U.S. Dist. LEXIS 48405, *43-44 (disqualification of law firm that represented former high-level employee of plaintiff).[28]

---

[27] The court's further comments about public trust and the integrity of the judicial process are worth reviewing:

> A reasonable member of the public or of the bar would share with TWA the **nagging suspicion** that plaintiff's trial preparation and presentation of their cases had benefitted from confidential information obtained from [the HR Manager]. . . .
>
> . . . . **the fairness and integrity of the judicial process and TWA's interest in a trial free from the risk that confidential information has been unfairly used against it must also be considered.**

588 F.Supp. at 1045 (emphasis added).

[28] These holdings are a normal outgrowth of authority barring lawyers from switching sides. *See, e.g., Hull v. Celanese Corp.*, 513 F.2d 568, 569 (2d Cir. 1975). In *Hull*, the Rabinowitz firm represented the plaintiff ("Hull"), an employee of Celanese Corporation ("Celanese") in a sexual discrimination case against Celanese. Hull began working at Celanese in 1963. In July 1972, Celanese hired an in-house attorney named Donata Delulio ("Delulio").

## Texas Law

Texas case law supports disqualification as well. In *In re Meador*, 968 S.W.2d 346, 350 (Tex.1998), the Texas Supreme Court specifically rejected that there are "bright line" rules related to disqualification[29] finding that all factors should be reviewed; notably, the court specifically acknowledged disqualification as an option when an employee with "extensive litigation responsibilities switched sides in the litigation." *Id.* at 354. In *Meador*, disqualification was rejected only because the former employee in that particular case was (1) not high ranking; and (2) had access to very little confidential data of the former employer. *Id.*

---

Within two months after Delulio began at Celanese, Hull filed charges with the EEOC. Delulio was assigned to work on the defense of the *Hull* case from February 1973 through September 1973. Delulio later sought to file a sexual discrimination case of her own and contacted the Rabinowitz firm (Hull's counsel) in November 1973. The Rabinowitz firm filed an EEOC charge on behalf of Delulio and thereafter filed a motion to allow Delulio to intervene in the *Hull* action against Celanese. Celanese moved to disqualify the Rabinowitz firm from representing Plaintiffs, including both Hull and Delulio, and the Second Circuit agreed.

The Rabinowitz firm argued that it had never worked for Celanese and therefore never had any direct access to its confidential information. The Rabinowitz firm maintained that it had carefully cautioned Delulio not to reveal any information received in confidence will working Celanese, but rather to confine any information given to facts related to her own case. Based on this, the Rabinowitz firm argued they should not be disqualified since they never received confidential information from Delulio. *Id.* at 571.

The Second Circuit held that it was not necessary for the court to inquire as to whether or not the Rabinowitz firm actually received confidential information. Rather, the court disqualified the Rabinowitz firm from representing Delulio and Hull because the matters were substantially related and it could be reasonably said that the plaintiff's attorney might have acquired confidential information from Delulio while representing her. The court reasoned that a breach of confidence need not be proven, it is presumed in order to preserve the spirit of the relevant attorney disciplinary rules. *Id.*

[29] The Texas Supreme Court noted,

> Indeed, we believe it is impossible to articulate a bright-line standard for disqualification where a lawyer, through no wrongdoing of his or her own, receives an opponent's privileged materials. For example, situations may exist where the attorney does everything within his or her power to mitigate the harm from the disclosure, yet the privileged information is so sensitive that disqualification is necessary to ensure a fair trial. On the other hand, there may be situations where the disclosure may cause some prejudice to movant's claim, yet other factors, such as the movant's fault contributing to the disclosure or the harm to the nonmovant from disqualification of his or her attorney, may justify denial of the motion to disqualify. **In sum, the trial court, giving due consideration to the importance of our discovery privileges, must consider all the facts and circumstances to determine whether the interests of justice require disqualification.**

968 S.W.2d at 351.

*Meador* follows *In re Bell Helicopter Textron, Inc.*, 87 S.W.3d 139 (Tex.App.—Fort Worth 2002, no pet.), which disqualified a law firm because it had retained as a consulting expert, a former Bell engineer and safety manager. The former employee, while at Bell, had worked with legal counsel and was privy to significant confidential data, as related to the then-pending litigation issues. The court noted the connection between that confidential data and the lawsuit then pending. Thus, in that kind of circumstance, the *Bell* court held that the movant is entitled to a conclusive presumption that confidences and secrets were imparted by the former employee.[30] The actual disclosure of confidences did not have to be proven; the issue was whether a genuine *threat* of disclosure exists because of similarity of the matters.[31] Finding a clear threat of disclosure existed, disqualification followed.

Also, in *Meador*,[32] the Texas Supreme Court cited with approval *Hull v. Celanese Corp.*, 513 F.2d 568 (2d Cir. 1975), a case involving an in-house lawyer leaving her employer-company and retaining the very same firm against which that former in-house counsel had been an adversary on a *still pending* matter for Celanese. As in *Bell,* the *Hull* court states that a breach of confidences will be presumed if the risk of disclosure is great because **(1)** the former employee had received significant confidential data while employed; **(2)** that person has now joined forces with the very law firm against whom she/he fought on behalf of the company; and **(3)** that same sensitive adversary matter is still a pending litigation. *Id.* at 571. The Sherwood-Basu relationship satisfies all three factors supporting disqualification.

---

[30] 87 S.W.3d at 146.

[31] *See In re Epic Holdings, Inc.*, 985 S.W.2d 41, 51 (Tex. 1998).

[32] 968 S.W.2d at 354.

**The Basu Law Firm Should Be Disqualified.**

The authority cited above – for example, *Williams*, *Cordy*, and *MMR/Wallace*, along with the noted Texas precedent – lead to one conclusion: the Basu Law Firm must be disqualified. The only difference here is that Sherwood's situation is *far more* egregious than most of these cases because *he was the client* – he was the principal point of contact for HHA and he had access to *all* information, internally and externally with Attorney Johnson. The exceedingly high level of Sherwood's access and involvement in these confidential matters is a critical factor; the more a witness knows, the higher the scrutiny and the more likely a court will conclude that disqualification should be ordered.[33] Here, Sherwood helped to form defenses at each step and worked hand in glove with counsel to defend HHA. And, notably, the same overtime and other issues[34] that Sherwood was intimately involved in on HHA's behalf are still live, pending, and vigorously defended litigation before the courts. Furthermore, it is believed that Sherwood has taken the Company laptop, and it is known that he underhandedly recorded conversations by HHA colleagues, who were not told they were being recorded. Also he has threatened to use confidential data against the Company. In light of all of these factors, one must conclude that the risk of disclosure is palpably high. Moreover, this risk will continue till the *Ortiz* claims are dismissed, resolved, or tried.

---

[33] *Compare, e.g., 1210 Colvin Ave., Inc., v. Tops Mkts., L.L.C.*, 2006 U.S. Distr. LEXIS 93689,*33-34 (W.D.N.Y. Dec. 27, 2006) (distinguishing case from that in *MMR/Wallace* because witnesses were not sufficiently privy to former employer's confidential information; disqualification of law firm denied though former employees disqualified to act as consultants); *with Rentclub*, 811 F.Supp. at 658 (M.D. Fla. 1992) (chief financial officer "had access to confidential business documents belonging to" former employer).

[34] See *Ortiz v. HongHua America, LLC*; Cause No. 2011-74114, which is pending in the 215th Judicial Court of Harris County, in which claims of negligence, fraud, and conspiracy are pending against HHA. The allegations relate to claimed "kickbacks" that Plaintiffs paid to certain workers and supervisors at the HHA site. Sherwood has been involved in all of these claims which were also alleged in Basu's demand letter to the company. See Ex. E.

Thus, the situation puts HHA, as happened to TWA in *Williams*, in an unfair position of having to defend against a law firm who now has on its team roster the very person with whom the Company once trusted with all its confidences, *and* a person who is presumed to have retained, wrongfully, a company laptop with company confidential data, *and* a person who secretly recorded conversations at HHA and has disclosed those recording only recently. That's wrong, raises an appearance of impropriety, and, critcally, *violates the trust of the public in the judicial system*. This is why disqualification should follow.

**Basu and Sherwood's Self-Serving Statements of Innocence Must Be Disregarded; a Presumption of Disclosure Should Be Assumed.**

Probably Basu will claim that it and Sherwood have promised not to share HHA confidential data. Basu will likely say that there is no proof of any such disclosure and the Court should not presume otherwise. This argument, however, begs the question really. *How can anyone ever know this?* Sherwood and Basu have now made their own pact of impenetrable secrecy as client and attorney, and how can anyone actually know or truly trust what has been disclosed without prying into that sacrosanct attorney-client domain? It is always presumed that confidential data is exchanged in an attorney-client relationship. As *Cargill,* 2007 U.S. Dist. LEXIS 48405, *25-26 states,

> The "very nature of that relationship is such that confidences should be exchanged freely between attorney and client. So important is this feature of the relationship, that it gives rise to duties of loyalty and confidentiality. Bu virtue of this relationship, privileged and confidential information is presumed to be exchanged.

Also, how will we know that Sherwood, a nonlawyer, understands the difference between "confidential" and "*non*confidential" data? Given that Sherwood had access to every bit of data related to HHA and its defense of these issues, and given that he led these confidential

discussions on HHA's behalf for months, the concepts of confidentiality and *non*confidentiality are likely meshed together, so that data separation would be impossible.

Furthermore, the level of confidences shared with Sherwood as HHA's point person greatly elevates the concerns here. This is *not* a lowly secretary or administrative person simply relaying ministerial data, this is also *not* a former employee being contacted by counsel, and this is *not* even the case of a person acting as an expert witness.[35] All those situations have raised considerable ethical questions, and have led courts, in some instances, to grant disqualification motions. Here, though, the situation is worse: Sherwood was an HHA *Vice President*, who closely worked for months with defense counsel on the Company's behalf in formulating the defense to the entire *Ortiz* controversy; he has knowledge of everything. Finally, HHA believes that Sherwood wrongly retained the Company's laptop with HHA confidential data (Ex. B), so that data is at his ready, as well.

An important inquiry is the following: ***What motivated both Sherwood, a disgruntled employee, and Basu, the known HHA adversary, to pledge allegiances to each other, once having been sworn enemies?*** Clearly, Sherwood's breach of contract action could have easily been handled by any number of competent lawyers in Houston. *Why Basu?* A reasonable person would know that each party has an ulterior motive in the alliance – some kind of leverage against HHA that *would not exist* but for Sherwood and Basu linking arms together. In this regard, the "nagging suspicion" of disclosure is reality.

This suspicion is more than a hunch because it is asserted that Sherwood left HHA with the Company's computer and has threatened disclosures, as well. So, a related inquiry is: ***Why***

---

[35] In the expert-consultant situation, there are several cases in which courts have ordered disqualification. In *Rentclub,* 811 F.Supp. at 655, the court disapproved of "raid[ing a company's] roster of former employees where those employees, during their tenure, have become privy to matters protected by the attorney-client or work-product privilege or which are subject to employee agreements protecting [the company's] trade secrets." *Id.* (quotation omitted).

***did Sherwood take the HHA laptop, why did he record HHA officers and managers, and, then, why did he join forces with Basu – if not to gain some kind of unfair advantage against HHA?*** Thus, any denial of impropriety by Basu and Sherwood, in light of what Sherwood knows and what he has done, must be disregarded in the face of common sense and human nature.[36]

As in *Williams*, the only reasonable assumption by the parties and *by the public* is that Sherwood would very likely disclose confidences or that it would be inevitable that his discussions would be intermixed with confidential HHA data (probably augmented by data sitting on the laptop that is believed to be in his possession). One can never presume otherwise. Further, an appearance of impropriety is raised simply if there is a "natural tendency" to "induce" the disclosure of confidential data by the association of opposing counsel with a former employee possessing such data. *See SAE Civil Construction*, 1996 U.S. Dist. LEXIS 3454, *7 ("the causing of confidential information to be passed is not necessary, nor is an actual intent to induce"; "natural tendency" to "induce" sufficient). Certainly, Sherwood's close relationship with Basu, while he holds onto the Company's laptop and secret audio recordings, and while Basu is prosecuting both *Ortiz* lawsuits, will promote, intentionally or not, the natural tendency to induce Sherwood to share all that he knows – particularly as no one can ever find out what actually is disclosed given the secret protections of the attorney-client relationship.

Several courts have rejected self-serving professions of ethical behavior when the situation raises serious concerns to the opposite. For example, in *MMR/Wallace Power,* 764 F.Supp. at 726-27, the court disqualified counsel who had contacted a former principal witness for the plaintiff (the former witness was not retained by defendant, only contacted for information). Defendant Thames argued that nothing improper had occurred and sworn

---

[36] *See Cordy,* 156 F.R.D. at 584 (rejecting argument that promised nondisclosure; finding argument "defies common sense and human nature").

statements and testimony were offered that professed innocence. Nonetheless, the *MMR/Wallace* court rejected the argument and ordered disqualification. The court concluded that it did "not find availing [defense counsel's] assertions that no confidential and/or privileged information was consciously or unconsciously revealed to them. . . ." Instead, the denials were deemed "self-serving protestations" that failed "to 'clearly and effectively' rebut the presumption that confidential information was exchanged. . . ." *Id.* at 726-27. As the court in *Cordy*, 156 F.R.D. at 584, stated,

> It is clear why this presumption arises that confidence passed to the attorney. There is an inherent difficulty in determining, at some later time, whether it happened. Self-serving affidavits of counsel and others are not helpful because of their "undeniable interest in preserving any tactical advantage they may have garnered."

*Id.* (citation omitted). The *Cordy* court also noted, like *Williams*, that nonlawyers are less sensitive to the obligations of confidentiality than lawyers. *Id. Accord SAE Civil Construction*, 1996 U.S. Dist. LEXIS 3454, *9; *Hull*, 513 F.2d at 571 (breach of confidence need not be proven, it is presumed in order to preserve the spirit of the relevant attorney disciplinary rules). *Cordy* severely discounted protests of innocence, finding that to believe that the person "will not remember and ultimately use that information, even 'subliminally,' . . . defies common sense and human nature." 156 F.R.D. at 584 (citation omitted) (emphasis added).

In *SAE Civil Construction*, the court put the issue as the following:

> The question that I must therefore address is: does the act of hiring as a trial consultant an opposing corporate party's former president who possesses a wealth of information about the matter for which he or she is hired – some confidentially received during his presidency from the corporation's counsel, some not – have a natural tendency to induce the former employee to reveal privileged attorney-client communications? I am confident that it does.

1996 U.S. Dist. LEXIS 3454, *7. The court found that the former company president, despite his promises otherwise, would face an "impossible" task "to ignore what he may have learned." *Id.*

The court noted the inherent difficulty of proving if confidences were actually passed along. *Id.* at *8. The court concluded by finding that the law firm had actually set in place a situation whereby such disclosures might be induced from the former president when he was hired as a consultant. Though finding that the involvement of the former president was lesser than that of the former employee in *MMR/Wallace,* the *SAE Civil Construction* court still concluded that disqualification of the law firm was warranted, citing a "nagging suspicion" that improper conduct would likely occur. *Id.* at *12-15. That same suspicion will always exist here, too, unless Basu is disqualified.

**Protecting Public Perceptions**

Finally, as *Williams* noted, there is the question of what this Court and its officers portray to the public. *See MMR/Wallace Power,* 764 F.Supp. at 727 ("Conduct of this sort can hardly be said to demonstrate 'a cautious regard for the disciplinary rules,'. . . . To allow [counsel] to develop his relationship with [the former employee], and [defendant] to reap the benefits of such an alliance, would most certainly taint any future trial of this matter."). *See also SAE Civil Construction*, 1996 U.S. Dist. LEXIS 3454, *10-11. In short, if the principle of the "appearance of impropriety" has any meaning, and if protecting the public's perception of fair trials in our American courts has value, then the disqualification of the Basu Law Firm should be ordered.

*[continued next page]*

WHEREFORE, Defendant HongHua America, LLC, prays that this Court grant this motion and disqualify the Basu Law Firm and all attorneys or of counsel working with or aligned with Basu – Annie Basu, Stephen Zajonc, and Douglas Welmaker – from representing the *Ortiz* Plaintiffs and for such other and further relief as is just and reasonable.

Respectfully Submitted,

/s/ Andrea M. Johnson
ANDREA M. JOHNSON
TBA NO. 10679600
Federal Bar No. 1285
BURLESON, LLP
700 Milam St., #1100
Houston, Texas 77002
Telephone, (713) 358-1700
Telecopier, (713) 358-1717

**ATTORNEY FOR DEFENDANT HONGHUA AMERICA, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of March 2012, I electronically filed a true and correct copy of Defendant's Memorandum of Law in Support of Its Motion to Disqualify Plaintiffs' Counsel with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participant(s):

Ms. Annie Basu
The Basu Law Firm, PLLC
PO Box 550496
Houston, Texas 77255

/s/ Andrea M. Johnson
ANDREA M. JOHNSON

**EXHIBIT TABLE OF CONTENTS**

A. Johnson Affidavit

B. Answer and Counterclaim (*Sherwood* Action)

C. EEOC Dismissal Documents

D. Anonymous Letters

E. Basu Demand Letter

F. Retention Letter

G. Case Law

H. Sherwood Affidavit for HHA EEOC Response

I. Notebook of Sherwood emails (to be provided upon request by the Court for *in camera* review)